IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LESLIE F.,

                       Plaintiff,

        v.                               Civil Action No.
                                     8:22-CV-1338 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

                       Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

COLLINS & HASSELER, PLLC     LAWRENCE D. HASSELER, ESQ.
225 State Street
Carthage, NY 13619

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        JASON P. PECK, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42

U.S.C. § 405(g) are cross-motions for judgment on the pleadings.[1]

Oral argument was conducted in connection with those motions on

December 15, 2023, during a telephone conference held on the record.

At the close of argument, I issued a bench decision in which, after

applying the requisite deferential review standard, I found that the

Commissioner's determination did not result from the application of

proper legal principles and is not supported by substantial evidence,

providing further detail regarding my reasoning and addressing the

specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench

decision, a transcript of which is attached and incorporated herein by

reference, it is hereby

ORDERED, as follows:

1)      Plaintiff's motion for judgment on the pleadings is

GRANTED.

2)      The Commissioner's determination that plaintiff was not

---

[1]      This action is timely, and the Commissioner does not argue otherwise.   It
has been treated in accordance with the procedures set forth in the Supplemental
Social Security Rules and General Order No. 18.   Under those provisions, the court
considers the action procedurally as if cross-motions for judgment on the pleadings
have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

     3)    The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

     4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:     December 19, 2023
             Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
LESLIE SCOTT F.,

                         Plaintiff,

vs.                              8:22-CV-1338

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on December 15, 2023, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.


                A P P E A R A N C E S

                    (By Telephone)

For Plaintiff:      COLLINS & HASSELER, PLLC
                    Attorneys at Law
                    225 State Street
                    Carthage, New York  13619
                      BY:  LAWRENCE D. HASSELER, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of the General Counsel
                    6401 Security Blvd.
                    Baltimore, Maryland  21235
                      BY:  JASON P. PECK, ESQ.


                *Jodi L. Hibbard, RMR, CSR, CRR*
                *Official United States Court Reporter*
                    *100 South Clinton Street*
                *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1           (The Court and all counsel present by

2           telephone.)

3           THE COURT:  All right.  Thank you.  Let me begin by

4   thanking counsel for excellent and spirited presentations.

5           Plaintiff has commenced this proceeding pursuant to

6   42 United States Code Section 405(g) to challenge an adverse

7   determination by the Acting Commissioner of Social Security

8   finding that he was not disabled at the relevant times and

9   therefore ineligible for the benefits for which he applied.

10          The background is as follows:  Plaintiff was born

11  in October of 1970, he is currently 53 years of age.  He was

12  50 years old at the amended onset date of October 4, 2020.

13  That is significant as we will see later because that places

14  him in an advanced age category for purposes of the Medical

15  Vocational Guidelines in the Commissioner's Regulations.

16  Plaintiff stands 5 foot 10 inches in height and weighs

17  approximately 177 pounds.  Plaintiff lives in Norfolk,

18  New York with his father, he's apparently divorced.

19  Plaintiff has a high school education and while in school he

20  attended regular classes.  He does not have any further

21  educational or vocational training.  Plaintiff has a driver's

22  license and does own a vehicle.

23          The record is a little equivocal as to when

24  plaintiff stopped working.  At one point it indicates that

25  occurred on January 1, 2017, but I believe he meant

1   January 1, 2018 from the context.  Before stopping work, he

2   was a line cook at a restaurant, which closed December 31,

3   2017.  Plaintiff did say he would -- he thinks he would have

4   stayed there working if the restaurant remained open, that's

5   at page 63 of the Administrative Transcript.  While there, he

6   did not work full time, he worked 20 to 25 hours per week and

7   was given various accommodations for his physical conditions.

8   Plaintiff also worked as a driver for a car dealer, taking

9   vehicles to auction, and was a manager at various Dunkin

10  Donut franchises.  He left that position when his performance

11  deteriorated due to personal problems -- apparently a

12  divorce.

13         Physically, plaintiff suffers from degenerative

14  disk disease of the cervical and lumbar spine and scoliosis.

15  He underwent surgery in 1987, he is fused to L2 level with

16  rods.  Plaintiff has been in pain management for his

17  condition since August of 2018.  He has attempted to manage

18  his pain through medication, physical therapy, home exercise,

19  nerve blocks, and RF ablation.

20         Mentally, plaintiff does not claim to have any

21  issues that would affect his ability to work.

22         Plaintiff, in addition to his residual neck and

23  back pain, also suffers from shoulder pain, as well as a

24  breathing issue for which he uses an inhaler two times per

25  day.  He has hypertension and a couple other nonsevere

1   physical impairments.

2          Plaintiff has been treated by various providers,

3   including FNP Hillary Heaton from North Country Community

4   Health Center, Dr. Richard Distefano at SOS, Dr. Aathirayen

5   Thiyagarajah, apparently a pain specialist, and FNP Krista

6   Switzer, also some sort of pain management nurse

7   practitioner.  Plaintiff is on various medications including

8   but not limited to gabapentin.  Plaintiff is a smoker, he

9   smokes one pack per day against medical advice.

10          Procedurally, plaintiff commenced this matter by

11  applying for Title II Social Security benefits on January 29,

12  2021, alleging an onset date of December 31, 2018.  That was

13  later amended to October 4, 2020, coinciding with his 50th

14  birthday.  A hearing was conducted on October 27, 2021 by

15  Administrative Law Judge Kenneth Theurer.  ALJ Theurer issued

16  an unfavorable decision on December 1, 2021.  That became a

17  final determination of the agency on November 7, 2022 when

18  the Appeals Council denied plaintiff's application for

19  review.  This action was commenced on December 12, 2022 and

20  is timely.

21          In his decision, ALJ Theurer applied the familiar

22  five-step sequential test for determining disability.

23          At step one he concluded plaintiff had not engaged

24  in substantial gainful activity subsequent to October 4,

25  2020.

1      At step two, he concluded that plaintiff does

2  suffer from severe impairments which impose more than minimal

3  limitations on his ability to perform basic work functions,

4  including degenerative disk disease of the lumbar spine,

5  scoliosis, and degenerative disk disease of the cervical

6  spine.

7      At step three, ALJ Theurer concluded that

8  plaintiff's conditions do not meet or medically equal any of

9  the listed presumptively disabling conditions set forth in

10  the Commissioner's regulations, specifically considering

11  Listings 1.15 and 1.16.

12      Administrative Law Judge Theurer next determined

13  that plaintiff retains the residual functional capacity to

14  occasionally lift and carry 20 pounds, frequently lift and

15  carry 10 pounds, sit for up to six hours and stand or walk

16  for approximately six hours in an eight-hour day with normal

17  breaks.  He can occasionally climb ramps or stairs, never

18  climb ladders, ropes, or scaffolds and can perform occasional

19  balancing, stooping, kneeling, crouching, and crawling.

20  Essentially this is a light work RFC with some modifications.

21      Applying that RFC at step four, ALJ Theurer

22  concluded that plaintiff is not capable of performing -- I'm

23  sorry, is capable of performing his past relevant work as a

24  store manager and operations manager at Dunkin Donuts, it was

25  a position he held from 2008 to 2012 and constituted

1    substantial gainful activity.  The vocational expert

2    testified that plaintiff is capable of performing that job

3    notwithstanding his impairments and resulting limitations.

4            As an alternative finding, ALJ Theurer concluded at

5    step five that there are other jobs plaintiff is capable of

6    performing notwithstanding his limitations, including cleaner

7    - housekeeping, cafeteria attendant, and fast food worker,

8    those are available in the national economy in sufficient

9    numbers and therefore concluded that plaintiff was not

10   disabled.

11           As you know, the court's function in this case is

12   extremely limited to determining whether substantial evidence

13   supports the resulting determination and correct legal

14   principles were applied.  As the Second Circuit has noted,

15   including in *Brault v. Social Security Administration*, 683

16   F.3d 443 from 2012, this is an extremely deferential

17   standard, more stringent than the clearly erroneous standard

18   that lawyers are accustomed to.  The Second Circuit's

19   decision in *Brault* and its position concerning the standard

20   of review was reaffirmed in *Schillo v. Kijakazi*, 31 F.4th 64

21   from April 6, 2022.  Substantial evidence of course is

22   defined as such relevant evidence as a reasonable mind would

23   find sufficient to support a conclusion.

24           In this case plaintiff raises three basic

25   contentions.  He argues that plaintiff's -- the ALJ

1    improperly evaluated his subjective complaints of

2    symptomology; secondly, he argues that the ALJ improperly

3    evaluated the medical statements of record, including that

4    from Nurse Practitioner Heaton, and instead favoring the

5    determinations, the administrative determinations of state

6    agency consultants; and third, he argues that the

7    administrative law judge should have addressed the question

8    of absences and whether plaintiff would be absent more than

9    allowed by an employer.

10          Turning first to the medical opinions, there are

11   essentially three opinions in the record.  The first is from

12   a state consultant, Dr. J. Sharif-Najafi, from March 26,

13   2021.  It appears at 70 to 80 of the Administrative

14   Transcript.  The result according to that doctor was that

15   plaintiff was capable of occasionally lifting 20 pounds,

16   frequently lifting 10 pounds, standing and/or walking a total

17   of six hours in an eight-hour workday, sitting about six

18   hours in an eight-hour workday, frequently climbing ramps,

19   stairs, occasionally climbing ladders, ropes, scaffolds,

20   frequently balancing, frequently stooping, frequently

21   kneeling, frequent crouching, occasionally crawling.  As

22   plaintiff has argued, this particular consultant did not have

23   available significant records.  Page 72 indicates that the

24   only records reviewed were from the Community Health Center

25   of North Country, and they were received on March 8, 2021,

1    and Canton Potsdam Hospital, also received in March of 2021.

2          The second opinion of record is again from a state

3    agency, administrative determination by a state agency

4    consultant, M. Perrotti, from May 27, 2021, it is at 83 to 95

5    and appears also at 432 to 433.  Dr. Perrotti affirmed the

6    initial determination.  Dr. Perrotti did have additional

7    records available to him, 83 through 86 reveals the

8    additional records that were reviewed and there are

9    significantly more records than were reviewed by his

10   predecessor.

11         The third opinion in the record is from FNP Hillary

12   Heaton from North Country Community Health Center, it is

13   cosigned by Occupational Therapist Stacey Graves.  It is

14   accompanied by a functional capacity evaluation conducted by

15   Ms. Graves.  It is dated July 8, 2021.  That appears at 439

16   to 444 and as I said, it's accompanied by the FCE.  The lift

17   capacity is similar to the RFC, however, it differs in the

18   following regards.  It claims that plaintiff can carry only

19   up to 10 pounds, can sit five hours out of an eight-hour

20   workday with breaks 40 minutes at a time, can stand only two

21   hours in an eight-hour workday 13 minutes at a time.  Can

22   walk one hour out of eight, at five to ten minutes at a time,

23   can never stoop or crawl, can only occasionally reach,

24   handle, finger, feel, push, and pull.  So there is clearly a

25   conflict between this medical source statement and the prior

1    administrative determinations.

2            The evaluation of medical evidence in this case is

3    subject to the new regulations that went into effect in March

4    of 2017.  Under those regulations the Commissioner does not

5    defer or give any specific evidentiary weight, including

6    controlling weight, to any medical opinions, including those

7    from the claimant's medical sources.  Instead, the ALJ must

8    consider whether those opinions are persuasive, by primarily

9    considering whether they are supported by and consistent with

10   the record in the case, 20 C.F.R. Section 416.920c(a).  In

11   his or her decision, an ALJ must articulate as to how and why

12   persuasive he or she finds the medical opinions and explain

13   how he or she considered those two elements, supportability

14   and consistency.  There are other factors that may and should

15   be considered but the ALJ is not required to explain

16   consideration of those factors.  20 C.F.R. Section

17   416.920c(c).  In this case -- and significantly, and case law

18   is clear, including in *Veino v. Barnhart*, 312 F.3d 578 from

19   the Second Circuit 2002, evaluation of conflicting medical

20   reports and opinions is a matter entrusted to an ALJ.

21           In this case, the administrative law judge did

22   acknowledge the treating relationship of Hillary Heaton,

23   although Ms. Heaton did not -- had not treated -- let's see.

24   I take that back.  It's clear and the plaintiff's counsel

25   acknowledged that a state agency administrative determination

1   can supply substantial evidence to support an RFC finding.

2   *Woytowicz v. Commissioner of Social Security*, 2016 WL

3   6427787, from the Northern District of New York, October 5,

4   2016.  In this case the administrative law judge found the

5   opinions of the two state consultants, Dr. Sharif-Najafi and

6   Dr. Perrotti, to be most persuasive, and Nurse Practitioner

7   Heaton's medical source statement to be partially persuasive

8   in that it does coincide when it comes to lifting with the

9   RFC.  The explanation is given on page 18 and page 19 for the

10  persuasiveness of each of those opinions, and I don't find

11  any error.  The portions of the opinion of Nurse Practitioner

12  Heaton that are rejected were found to be inconsistent with

13  the conclusion of Occupational Therapist Graves.  It is also

14  inconsistent with the opinions of Dr. Sharif-Najafi and

15  Dr. Perrotti.  I don't find any error in the weighing of

16  those opinions which, as I said before, is a matter entrusted

17  to the Commissioner.  I believe the explanation given by

18  Administrative Law Judge Theurer was proper and permits

19  adequate judicial review and is supported by substantial

20  evidence.

21          The second issue, and it's actually the third

22  issue, is the absenteeism issue.  Plaintiff argues that the

23  RFC should have included a statement as to how often

24  plaintiff might be absent from work.  Of course pivotal to

25  any disability determination is an RFC assessment, which

1    represents a finding of the range of tasks that claimant is

2    capable of performing notwithstanding his or her impairments.

3    Ordinarily that means a claimant's maximum ability to perform

4    sustained work activities in an ordinary setting on a regular

5    and continuing basis, meaning eight hours a day for five days

6    a week or an equivalent schedule.  And an RFC of course is

7    informed by consideration of claimant's physical and mental

8    abilities, symptomology, and other limitations that could

9    interfere with work activities on a regular and continuing

10   basis, as well as all the relevant medical and other evidence

11   of record.

12              THE CLERK:  Judge, I'm sorry to interrupt you, I

13   think somehow we may have gotten dropped from the call.  Can

14   we check to see if the counselors can still hear us?

15              THE COURT:  Can you still hear us?  Mr. Hasseler?

16   Mr. Peck?

17              THE CLERK:  I can see us on -- I can see them on

18   but I no longer see us on.  So I think something may have

19   happened with this.

20                   (Pause in Proceedings.)

21              THE COURT:  Counsel, apparently for some reason my

22   phone malfunctioned.  Can someone tell me about where I was?

23              MR. PECK:  Your Honor, this is Jason Peck, you were

24   about to -- you had gotten through all the primary stuff and

25   you were about to I think issue the verdict.

1          THE COURT:  Okay.  So, did I go through the

2     contentions that plaintiff raised?

3          MR. HASSELER:  Yeah, the last thing I remember, you

4     cited a couple cases.

5          THE COURT:  Which case, do you remember?

6          MR. HASSELER:  It was 31 F. -- at 64.

7          THE COURT:  Oh, that's *Schillo*.

8          MR. HASSELER:  31 F. --

9          THE COURT:  Okay, you'll get a transcript of this,

10    let me just give you the short version.  So I went through

11    the contentions, I went through evaluation of medical

12    statements under the new regulations, and I found that

13    because the evaluation of conflicting medical opinions is a

14    matter entrusted to the administrative law judge, I did not

15    find any error.  I found that there was a proper explanation

16    given that permitted adequate judicial review, and that the

17    resulting determination was supported by substantial

18    evidence.

19         I truly apologize, we did not notice earlier that

20    apparently the call had dropped.

21         I also went through the -- I was addressing the

22    second issue which was really the third issue, absences.  I

23    went through what an RFC determination is, and I was about to

24    say that plaintiff bears the burden of proving his or her

25    limitations.  I didn't see any evidence in the record,

1  including in plaintiff's testimony, that revealed that he

2  would be absent from work, and implicit in the state

3  administrative determinations, there was no reference to

4  absences there.  Nurse Practitioner Heaton was not asked

5  about absences, and so absent plaintiff coming forward with

6  some evidence that would support the notion that he would be

7  absent from work more than one time per month, which I think

8  is what the vocational expert said is the limit, I find no

9  error.

10  And the last issue, which was actually the first,

11  was assessment of plaintiff's subjective reports of

12  symptomology.  An ALJ of course must take into account

13  plaintiff's subjective complaints when going through the

14  five-step disability analysis.  20 C.F.R. Section 404.1529(a)

15  and (b).  The ALJ, however, is not required of course to

16  blindly accept subjective testimony of a complainant, but

17  instead must assess first whether the claimant has a

18  medically determinable impairment that can reasonably be

19  expected to produce the alleged symptoms and if so, evaluate

20  both the intensity and persistence of those symptoms and the

21  extent to which those symptoms limit the claimant's ability

22  to perform work-related activities.

23  The matter is subject to Social Security Ruling

24  16-3p.  Under that ruling, an ALJ should consider factors

25  including the claimant's daily activities, the location,

1    duration, frequency, and intensity of any symptoms, any
2    precipitating and aggravating factors, the type, dosage,
3    effectiveness, and side effects of any medications taken,
4    other treatment received, and other measures taken to relieve
5    symptoms.  And of course if plaintiff's testimony was
6    rejected, the ALJ must explicitly state the basis for doing
7    so with sufficient particularity to enable a reviewing court
8    to determine whether those reasons for disbelief were
9    legitimate, and whether the determination is supported by
10   substantial evidence.  *Tome v. Schweiker*, 724 F.2d 711,
11   Second Circuit 2000 -- 1984, and *Martone v. Apfel*, 70
12   F.Supp.2d 145, Northern District of New York 1999.

13           In this case, the administrative law judge went
14   through the treatments received by the plaintiff, 15 to 17 of
15   the Administrative Transcript.  As far as I can see it's
16   replete with positive findings of x-ray results, CT scan
17   results, and MRI results.  Plaintiff clearly underwent pain
18   management strategies.  Many of those notes cited show
19   reduced range of motion, failed physical therapy attempts,
20   tenderness, and positive straight leg raising.  The summary
21   of the administrative law judge's evaluation of plaintiff's
22   complaints is one paragraph, it is succinct.  No matter how
23   sincere, however, statements by interested parties cannot
24   overcome evidence of record.  Furthermore, an individual's
25   statements about his or her symptoms alone are insufficient

1    to establish that an individual is disabled.  In formulating

2    the residual functional capacity for the claimant, moreover,

3    I have accounted for any functional deficits of the plaintiff

4    by limiting him to light exertional work with some postural

5    restrictions.

6           In my view, and I have read thoroughly and reread

7    thoroughly this decision, it is woefully deficient.  The

8    administrative law judge does not explain why in his view the

9    medical evidence does not support plaintiff's claims of

10   objective symptomology in a manner that would allow for

11   sufficient judicial review.  I find that this is harmful

12   error.  If plaintiff were limited to sedentary work under the

13   Medical Vocational Guidelines and particularly Grid Rules

14   201.12 and 201.14, he would be found to be disabled.

15          This needs to go back to the administrative law

16   judge for a proper consideration of weighing plaintiff's

17   subjective complaints and addressing the factors set forth in

18   SSR 16-3p.  There's no reference to what he is capable of

19   doing, for example, in terms of activities of daily living

20   and how they would translate to the ability to work full

21   time.

22          So I'm going to grant judgment on the pleadings to

23   the plaintiff without a directed finding of disability

24   because I don't find persuasive evidence of disability, and

25   remand the matter to the Commissioner for further

1    consideration.  Thank you both, hope you have happy holidays.

2              MR. HASSELER:  Thank you, your Honor, you too.

3              MR. PECK:  Thank you, your Honor.

4                   (Proceedings Adjourned, 2:47 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RMR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                          Dated this 18th day of December, 2023.

17

18

19                          /S/ JODI L. HIBBARD

20                          JODI L. HIBBARD, RMR, CRR, CSR
                            Official U.S. Court Reporter
21

22

23

24

25